**Scott Allen HAIN, Petitioner–Appellant,**

v.

**Mike MULLIN, Warden, Oklahoma State Penitentiary, Respondent–Appellee.**

**No. 03–5038.**

United States Court of Appeals, Tenth Circuit.

March 26, 2003.

---

Steven M. Presson and Robert W. Jackson of Jackson & Presson, P.C., Norman, OK, for Petitioner–Appellant.

W.A. Drew Edmondson, Attorney General of Oklahoma and Robert L. Whittaker, Assistant Attorney General, Criminal Division, Oklahoma City, OK for Respondent–Appellee.

David E. O'Meilia, United States Attorney, Kevin Danielson, Assistant United States Attorney, Tulsa, OK, on the Memorandum Brief for the United States.

Before BRISCOE, LUCERO and MURPHY, Circuit Judges.

BRISCOE, Circuit Judge.

Petitioner Scott Hain, an Oklahoma state prisoner convicted of capital murder and sentenced to death, appeals the district court's denial of his request for funding under 21 U.S.C. § 848(q)(8). At issue is whether § 848(q)(8) entitles state prisoners, such as Hain, to federally appointed and funded counsel to represent them in state clemency proceedings. Because we agree with the district court that § 848(q)(8) does not authorize funding under these circumstances, we affirm.[1]

---

**1.** Although Hain has not addressed the issue of our appellate jurisdiction, we have consid-

## I.

Hain was convicted in Oklahoma state court of two counts of first degree murder and sentenced to death. After exhausting his state-court remedies, Hain filed a 28 U.S.C. § 2254 petition for federal habeas relief. The district court, acting pursuant to 21 U.S.C. § 848(q)(4)(B), appointed counsel to represent Hain. The district court subsequently denied Hain's request for habeas relief. We affirmed the district court's decision. *Hain v. Gibson*, 287 F.3d 1224 (10th Cir.2002). The Supreme Court of the United States denied Hain's petition for writ of certiorari. *Hain v. Mullin*, —— U.S. ——, 123 S.Ct. 993, 154 L.Ed.2d 916 (2003).

Hain's federally appointed counsel then filed a motion with the district court "seeking confirmation of counsel's continuing obligation to represent ... Hain, and under ... § 848(q)(8), to receive compensation for time and expenses in representing ... Hain in a [state] clemency proceeding." Petitioner's Br. at 2. The district court denied the motion. In doing so, the district court concluded, consistent with previous orders issued in the Northern District of Oklahoma, that § 848(q)(8) does not encompass representation of a state prisoner in state clemency proceedings. Hain filed a timely notice of appeal from the district court's order.

## II.

Title 21, § 848(q)(4)(B) creates a right to federally appointed and funded counsel for "financially unable" state capital defendants pursuing federal habeas relief. *See generally McFarland v. Scott*, 512 U.S.

849, 855, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994). Section 848(q)(8) of Title 21 in turn provides:

> Unless replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant, each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings, including pretrial proceedings, trial, sentencing, motions for new trial, appeals, applications for writ of certiorari to the Supreme Court of the United States, and all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant.

21 U.S.C. § 848(q)(8).

Hain contends that § 848(q)(8) encompasses state executive clemency proceedings pursued by a state capital defendant following the denial of federal habeas relief. Thus, Hain contends, he is entitled to federally appointed and funded counsel to represent him in his upcoming state clemency proceedings. The United States, whom we invited to participate in this appeal, disputes Hain's interpretation of § 848(q)(8). In the United States' view, § 848(q)(8) was never intended by Congress to encompass state judicial or clemency proceedings.

 Because this appeal hinges on the interpretation of a federal statute, we apply a de novo standard of review.[2] *See*

---

ered the issue *sua sponte* and conclude the district court order appealed by Hain is a "final decision" for purposes of 28 U.S.C. § 1291. *See Clark v. Johnson*, 278 F.3d 459, 460–61 (5th Cir.2002).

**2.** As noted by the dissent, the Tenth Circuit has previously appointed counsel under

§ 848(q)(8) to represent a state habeas petitioner in a state clemency proceeding. *See Hooker v. Mullin*, Nos. 00–6181 & 00–6186 (10th Cir. Dec. 10, 2002). Because, however, that was an unpublished order, it does not constitute binding precedent. *See* 10th Cir. R. 36.3(A).

*United States v. Quarrell,* 310 F.3d 664, 669 (10th Cir.2002). As in any instance of statutory construction, we begin with the language of the statute. *See id.* If that language "is clear and unambiguous, the plain meaning of the statute controls." *Id.* A statute is ambiguous if it is "capable of being understood in two or more possible senses or ways." *Chickasaw Nation v. United States,* 534 U.S. 84, 90, 122 S.Ct. 528, 151 L.Ed.2d 474 (2001) (internal quotations omitted). If an ambiguity is found in the statutory language, "a court may seek guidance from Congress's intent, a task aided by reviewing the legislative history." *Quarrell,* 310 F.3d at 669 (internal quotations omitted). "A court can also resolve ambiguities by looking at the purpose behind the statute." *Id.*

■ Importantly, "[i]n determining whether Congress has specifically addressed the question" at issue, we are not confined to examining § 848(q)(8). *Food and Drug Admin. v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 132, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000). As the Supreme Court has emphasized, "[t]he meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *Id.* Thus, "[i]t is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Id.* (quoting *Davis v. Michigan Dept. of Treasury,* 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989)).

Three of our sister circuits have addressed similar appeals. The first to do so, the Eighth Circuit, concluded that "[t]he plain language of § 848(q)(8) evidences a congressional intent to insure that indigent state petitioners receive 'reasonably necessary' ... clemency services from appointed, compensated counsel." *Hill v. Lockhart,* 992 F.2d 801, 803 (8th Cir.1993). More recently, the Fifth and

Eleventh Circuits have concluded otherwise, holding that § 848(q)(8) does not encompass state clemency proceedings. *See Clark v. Johnson,* 278 F.3d 459, 462–63 (5th Cir.), *cert. denied,* — U.S. —, 123 S.Ct. 687, 154 L.Ed.2d 580 (2002); *King v. Moore,* 312 F.3d 1365, 1368 (11th Cir.), *cert. denied,* — U.S. —, 123 S.Ct. 662, 154 L.Ed.2d 563 (2002). For the reasons that follow, we agree with the Fifth and Eleventh Circuits.

Consistent with the rules of statutory construction outlined above, we believe the meaning of § 848(q)(8) can only be determined by examining it in light of its place in the overall statutory scheme. As noted by the Eleventh Circuit in *King,* § 848(q)(8) is located within a statute, 21 U.S.C. § 848, whose initial topic is punishment for defendants who engage in continuing criminal enterprises in violation of federal drug laws. In particular, § 848 authorizes the death penalty for certain of these defendants and outlines the trial and appellate procedures to be followed in such cases. Also included within § 848 are provisions authorizing the appointment and funding of "counsel for financially unable [capital] defendants." 21 U.S.C. § 848(q). Though these latter provisions deal primarily with federal capital defendants, § 848(q)(4)(B) also authorizes the appointment of counsel for any "financially unable" defendant in a "post conviction proceeding under section 2254 ... of Title 28, seeking to vacate or set aside a death sentence...." In other words, state capital defendants seeking federal habeas relief are entitled to federally funded and appointed counsel to represent them if they are "financially unable to obtain adequate representation...." 21 U.S.C. § 848(q)(4)(B).

■ Viewing § 848(q)(4)(B) in context, it is apparent that "the language contained in the sections preceding and following [it]

relates more directly to federal criminal trial and appeals, than to habeas cases seeking relief from state court sentences." *King*, 312 F.3d at 1367. Thus, we conclude "the word 'federal' is an implied modifier for 'proceedings' when 'proceedings' are mentioned in § 848(q)(8) of the statute: 'proceedings' = the federal proceedings that are available to the defendant."[3] *Id.*

A broader construction of § 848(q)(8), in our view, defies common sense and would produce absurd results. *See generally United States v. Brown*, 333 U.S. 18, 27, 68 S.Ct. 376, 92 L.Ed. 442 (1948) ("No rule of construction necessitates our acceptance of an interpretation resulting in patently absurd consequences."). Were we to accept Hain's proposed construction, every state capital defendant unsuccessful in seeking federal habeas relief would be entitled to

federally appointed and funded counsel to represent them in state clemency proceedings. More dramatically, every state capital defendant successful in seeking federal habeas relief would be entitled to federally appointed and funded counsel to represent them in their resulting state trials, state appeals, and state habeas proceedings.[4] In our view, nothing in § 848 or its legislative history indicates that Congress intended such a result. Indeed, as noted by the Eleventh Circuit in *King*, "[t]he whole-business of federal compensation (controlled by federal courts) for lawyers acting in state proceedings seems too big and innovative to have been dealt with," as was § 848, "at the tail end of a session as the legislation was being approved at the last moment." 312 F.3d at 1367–68.

As a final matter, we take issue with the dissent's assertion that "it is undisputed

---

**3.** The dissent contends it is impossible "to limit the language of § 848(q)(8) to federal clemency proceedings" because the statute refers to "executive or other clemency" and the federal system offers only executive clemency. Dissent at 5. In other words, the dissent suggests, the statute's reference to "other clemency" must have been intended to refer to state clemency proceedings. We respectfully disagree. In each state that affords clemency procedures to capital defendants, "the power [of clemency] is vested in the executive branch...." Alyson Dinsmore, *Clemency in Capital Cases: The Need to Ensure Meaningful Review*, 49 UCLA L.Rev. 1825, 1838 (2002). Thus, state systems of clemency could just as easily fall within the scope of § 848(q)(8)'s reference to "executive clemency" as they could to its reference to "other clemency." Of course, that leaves open the question of what was intended by the phrase "other clemency." In our view, the phrase is ambiguous, and it is possible that Congress simply intended it as a catch-all for any types of federal clemency systems that might be enacted in the future. In the end, we conclude that § 848(q)(8)'s reference to "executive or other clemency" is ambiguous and, for the reasons outlined, was intended to be modified by the word "federal."

**4.** The dissent disputes this proposition. In the dissent's view, if a state habeas petitioner obtains federal habeas relief and is granted a new trial, § 848(q)(4)(B) would "no longer [be] implicated" because, "[u]nder *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), states are obligated to provide counsel to indigent defendants at criminal trials." Dissent at 8. We respectfully disagree. Section 848(q)(4)(B) hinges on a defendant's financial status, i.e., it requires appointment of counsel if a defendant is "financially unable to obtain adequate representation." Once appointed thereunder, counsel's representation of the defendant presumably must continue unless (a) the defendant's financial status changes, or (b) counsel is "replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant...." 21 U.S.C. § 848(q)(8). Although it is possible that federally appointed counsel could be replaced by state appointed counsel in a new trial setting, we are not convinced that would occur. For example, given the standards for federally appointed counsel set forth in 21 U.S.C. §§ 848(q)(5) and (6), which are geared exclusively toward practice in federal court, it is likely that the "similarly qualified" standard could not be met by state appointed counsel.

that Oklahoma does not fund counsel at state clemency proceedings." Dissent at 4 n. 1. Although Hain has certainly made that assertion, the district court made no factual findings on this point (since it concluded that § 848(q)(8) did not encompass state clemency proceedings). Thus, it is impossible to reach any conclusion on this point based upon the record before us.

The judgment of the district court is AFFIRMED. Hain's Motion Challenging Standing of Respondent to Appear in this Appeal is DENIED.

LUCERO, Circuit Judge, dissenting.

Because the interpretation of 21 U.S.C. § 848(q) constructed by the majority is precluded by the plain meaning of the statutory language, I respectfully dissent. In adopting § 848(q), Congress unequivocally provided for appointment and payment of one or more attorneys to represent defendants in 28 U.S.C. § 2254 habeas proceedings challenging state-imposed death sentences. Using words of laser-like precision, Congress directed that "each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings ... and shall also represent the defendant in such ... proceedings for *executive or other clemency* as may be available to the defendant." § 848(q)(8) (emphasis added). Prior to the instant case, at least one district of this circuit, the Western District of Oklahoma, has authorized the payment of counsel for § 2254 petitioners in subsequent state clemency proceedings. This practice has been approved by a panel of this court by unpublished disposition. *See Hooker v. Mullin,* Nos. 00–6181 & 00–6186 (10th Cir. Dec. 10, 2002) (order appointing counsel pursuant to § 848(q)(8) for state clemency proceeding). By today's ruling, the majority would avoid the congressional mandate and disturb our circuit practice by the

expedient of two arguments: (1) that § 848 relates to federal criminal trials and appeals and the provisions of § 848(q) must be qualified as applying only to federal proceedings; and (2) to afford the statute its plain meaning would effect an absurd result. Both propositions are incorrect.

I

This case hinges on the interpretation of 21 U.S.C. § 848(q). The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Thus, as always, we begin "with the language of the statute," *Duncan v. Walker,* 533 U.S. 167, 172, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001), and we must "give effect, if possible, to every clause and word," *id.* at 174, 121 S.Ct. 2120 (quotation omitted). "When the meaning of the statute is clear, it is both unnecessary and improper to resort to legislative history to divine congressional intent." *Edwards v. Valdez,* 789 F.2d 1477, 1481 (10th Cir. 1986). As Justice Holmes once wrote, "We do not inquire what the legislature meant; we ask only what the statute means." Oliver Wendell Holmes, *Collected Legal Papers* 207 (1920), *cited in Schwegmann Bros. v. Calvert Distillers Corp.,* 341 U.S. 384, 397, 71 S.Ct. 745, 95 L.Ed. 1035 (1951) (Jackson, J., concurring).

Section 848(q)(4)(B) provides:

In any post conviction proceeding under section 2254 or 2255, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or ... other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the

furnishing of such other services in accordance with paragraphs (5), (6), (7), (8), and (9).

21 U.S.C. § 848(q)(4)(B). Because this provision includes § 2254 proceedings, a path exclusive to *state* prisoners, it expressly applies to petitioners seeking federal habeas relief from a state-imposed death sentence. Paragraph (8) of the same section provides, in words that I repeat, "each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings ... and shall also represent the defendant in such ... *proceedings for executive or other clemency as may be available to the defendant."* *Id.* § 848(q)(8) (emphasis added). Thus, under the plain language of the statute, a state prisoner who seeks federal habeas relief is expressly entitled to federally funded counsel at subsequent state clemency proceedings.

In *Hill v. Lockhart,* 992 F.2d 801 (8th Cir.1993), the Eighth Circuit reached this very conclusion. According to the *Hill* court, "[t]he plain language of § 848(q) evidences a congressional intent to insure that indigent state petitioners receive 'reasonably necessary' ... clemency services from appointed, compensated counsel."[1] *Id.* at 803. Although the Eleventh and Fifth Circuits have reached a different

conclusion, namely that § 848(q) does not authorize federal funding for representation in state clemency proceedings, their reasoning is simply unpersuasive and contrary to the plain language of the statute. Thus, unlike the majority, I would not adopt their holdings for our circuit.

In *Clark v. Johnson,* 278 F.3d 459, 462–63 (5th Cir.2002), the Fifth Circuit summarily held that the phrase "proceedings for executive or other clemency as may be available to the defendant," as used in § 848(q)(8), does not apply to state clemency proceedings. Similarly, in *King v. Moore,* 312 F.3d 1365, 1367–68 (11th Cir. 2002), the Eleventh Circuit determined that Congress's intent to pay for counsel in state proceedings "is by no means clear" and agreed that the statute does not provide federal compensation for counsel at state clemency proceedings.

Adopting the reasoning of the Eleventh and Fifth Circuits, the majority concludes that the meaning of § 848(q) can be gleaned only by placing it in the context of the entire statutory scheme. Because § 848(q) is part of a statute that punishes violations of federal drug laws, outlining the trial and appellate procedures in such cases, the majority holds that "the language contained in the sections preceding and following [§ 848(q)(4)(B)] relates more

---

**1.** As originally enacted, § 848(q)(10) provided that services performed by counsel at a clemency hearing would be compensated at "reasonably necessary" rates. Anti–Drug Abuse Amendments Act of 1988, Pub.L. No. 100–690, Title VII, § 7001, 102 Stat. 4387, 4394. Accordingly, in *Hill,* the Eighth Circuit set forth two requirements that must be met in order for services performed in a state clemency proceeding to be considered "reasonably necessary" under § 848(q)(10): (1) the request must be "made as part of a non-frivolous federal habeas corpus proceeding," and (2) state law must "provide[ ] no avenue to obtain compensation for these services." 992 F.2d at 803. Congress subsequently amended § 848(q)(10), however, removing the "reason-

ably necessary" language and replacing it with a maximum hourly fee rate. Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, § 903(b), 110 Stat. 1318, 1318. It might be argued that this amendment eliminates the need to show that state compensation is unavailable, but, in my view, such a showing remains necessary to demonstrate that a defendant is "unable to obtain adequate representation" under § 848(q)(4)(B). *See infra.* In any event, both factors are met here. There is no allegation that Hain's federal habeas petition was frivolous, and it is undisputed that Oklahoma does not fund counsel at state clemency proceedings. Thus, Hain would be entitled to funding even under the factors enunciated in *Hill.*

directly to federal criminal trial and appeals, than to habeas cases seeking relief from state court sentences." (Maj. Op. at 1149, 1150 (quoting *King*, 312 F.3d at 1367).) Moreover, the majority agrees with the Eleventh Circuit that the word "federal" is an implied modifier for "proceedings," as it is used in § 848(q)(8). Thus, according to the majority, a habeas petitioner under this statute ·is entitled to federally appointed and funded counsel only at all subsequent *federal* proceedings.

I agree that we must view § 848(q)(8) in context, but this context includes § 848(q)(4)(B), which specifically states that funding for counsel will be provided "[i]n any post conviction proceeding" brought by *state* prisoners under § 2254 to vacate a death sentence, as well as in § 2255 proceedings. As stated earlier, § 848(q)(8) provides that counsel shall also represent any defendant at "proceedings for executive or other clemency as may be available to the defendant." A state prisoner, of course, will have only state clemency proceedings available. It is not possible, therefore, to limit the language of § 848(q)(8) to federal clemency proceedings, as would the majority. Moreover, as appellant notes, the reference to "executive *or other* clemency," § 848(q)(8) (emphasis added), is meaningless unless it is assumed to include state clemency, as there is no other form of clemency in the federal system. Reading § 848(q)(8) in context does not mean ignoring its plain text.[2]

The extraordinary steps that the Fifth Circuit, the Eleventh Circuit, and the panel majority have taken to justify their result subject them to the same type of criticism leveled against *Church of the Holy Trinity v. United States*, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892). In

*Holy Trinity,* a church in New York had contracted with an Englishman to have him cross the Atlantic and become its rector and pastor. *Id.* at 457–58, 12 S.Ct. 511. Unmoved by the piety of the Holy Trinity parishioners, the United States government claimed that this contract violated a federal statute that made it illegal for any person to "in any way assist or encourage the importation or migration, of any alien ... into the United States ... under contract or agreement ... to perform labor or service of any kind in the United States." *Id.* at 458, 12 S.Ct. 511. Faced with this statute, the Court concluded that Congress could not possibly have intended to cover a contract between a church and its rector, as "the intent of congress was simply to stay the influx of ... cheap, unskilled labor." *Id.* at 465, 12 S.Ct. 511. Thus, the Court decided that "labor" had to mean *manual* labor, even though that was not what the statute said. In a recent commentary, Justice Scalia excoriated the Court's decision in *Holy Trinity* as an example of the tendency of common-law judges to ignore the plain meaning of a statute in order to give effect to the supposed unexpressed intent of the legislature. As Justice Scalia noted, "Congress can enact foolish statutes as well as wise ones, and it is not for the courts to decide which is which and rewrite the former." Antonin Scalia, *A Matter of Interpretation: Federal Courts and the Law* 20 (1997).

## II

This gets me to the majority's second proposition, that applying the statute literally would produce absurd results. I am equally unpersuaded by this argument. In order "to justify a departure from the

---

**2.** Presumably, the majority would agree that § 848(q) applies to all capital cases, not just drug-related cases, even though § 848 is generally addressed at violations of the federal drug laws.

letter of the law" on the ground of absurdity, "the absurdity must be so gross as to shock the general moral or common sense." *Crooks v. Harrelson*, 282 U.S. 55, 60, 51 S.Ct. 49, 75 L.Ed. 156 (1930); *see also Payne v. Fed. Land Bank of Columbia*, 916 F.2d 179, 182 (4th Cir.1990) (noting that the absurdity exception applies only when "the absurdity and injustice of applying the provision [literally] to the case would be so monstrous that all mankind would without hesitation, unite in rejecting the application") (quoting *Sturges v. Crowninshield*, 17 U.S. (4 Wheat.) 122, 202–03, 4 L.Ed. 529 (1819)). While, to the majority, funding counsel for state proceedings subsequent to a federal habeas petition might not be a wise use of the federal purse, reading the statute literally does not create an absurdity "so gross as to shock the general moral or common sense." *Crooks*, 282 U.S. at 60, 51 S.Ct. 49. To my mind, there is nothing absurd whatsoever about the use by Congress of its power to provide for the payment of counsel in state clemency proceedings, where such is not otherwise available, in order to satisfy its collective conscience that in this country defendants facing a death penalty following habeas may seek executive clemency as a final resort. I consider the majority's conclusion to the contrary disturbing.

As for the majority's proposition that, were we to afford the statute its plain meaning, successful § 2254 habeas petitioners would be entitled to payment of counsel at resulting state trials and appeals, there are three straightforward answers. First, the issue is not before us. Second, even if it were, the proposition has no potential factual basis. Section 848(q)(4)(B) states that counsel will be appointed when a defendant "is or becomes financially unable to obtain adequate representation." If the state becomes obliged to provide counsel, "adequate representation" is available, and § 848(q)(4)(B) is no

longer implicated. Under *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), states are obliged to provide counsel to indigent defendants at criminal trials. Thus, a defendant granted a new trial as a result of a successful § 2254 petition is constitutionally guaranteed counsel, and is no longer "unable to obtain adequate representation" under the statute. Under prevailing practice, indigent defendants are provided counsel at state expense. By contrast, when a state refuses to pay for counsel at clemency proceedings, the defendant remains unable to obtain adequate representation, and such representation is funded under the statute. Third, if some court at some future date read § 848(q) as requiring the appointment of counsel at new trials subsequent to a grant of habeas—even though counsel is available under state procedures—Congress, if it chooses to do so, may address the issue.

### III

Because the plain language of 21 U.S.C. § 848(q) entitles state prisoners on death row, like Hain, to receive federal funding for representation in state clemency proceedings subsequent to the filing of a § 2254 petition, I would reverse the judgment of the district court.